# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| LANCE R. GORDON and RONI A. GORDON,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW WEST HEALTH SERVICES, and its related affiliates, subsidiaries, and successors,<br><br>Defendants. | CV 15-24-GF-BMM<br><br><br>**ORDER** |

## I. PROCEDURAL BACKGROUND

New West has filed a Motion to Deny Class Certification before the close of class discovery[1] and before Plaintiffs affirmatively moved to certify a class. (Doc. 49.) New West has also filed a Motion to Strike Plaintiff's Supplemental Briefing. (Doc. 66.) Gordon has filed a Motion for Class Certification. (Doc. 79.)

---

[1] Pursuant to the Court's July 20, 2015, Scheduling Order, discovery shall take place in two phases. Phase One discovery shall consist of discovery regarding (1) class certification issues, and (2) all aspects of Plaintiffs' individual claims. Phase Two discovery shall consist of discovery regarding class claims if a class is certified by the Court. Phase One discovery shall close on April 15, 2016. (Doc. 24 at 2.) Additionally, Plaintiffs have until May 6, 2016, to move for class certification. (*Id.*)

1

## II. FACTUAL BACKGROUND

Plaintiff Roni A. Gordon works as an employee of the Billings Clinic and Lance and Roni Gordon were insured for health care under New West Health Services Billings Clinic plan in 2010 and 2011. (Doc. 35 at 2; Doc. 50 at 8.) The policy under which the Gordons were insured remained in effect at the time that they made a claim to New West on behalf of their minor son. (Doc. 35 at 3–4.) The policy provides criteria for what it considers to be medically necessary treatment. (Doc. 35 at 4.) The Gordons' attending physician recommended inpatient detoxification therapy, but New West denied the claim based upon its determination that inpatient detoxification was not medically necessary. *Id*.

Plaintiffs admitted their minor son to Rocky Mountain Treatment Center on May 6, 2010, for inpatient treatment. Plaintiffs' son continued with inpatient treatment until discharge on June 4, 2010. *Id*. at 5. Plaintiffs asked for reconsideration of the denial. New West refused. Plaintiffs exhausted all administrative remedies available to them through the Billings Clinic Plan. *Id*. at 6. Plaintiffs filed their Second Amended Complaint on September 18, 2015. (Doc. 35.) Plaintiffs' Second Amended Complaint contains three counts: (1) Request for Declaratory Relief, (2) Civil Enforcement Claims under 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(3), and (3) Class Action. (*Id*.)

## III. LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs class actions. A party seeking to certify a class action must meet the four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). Rule 23 provides more than "a mere pleading standard," and the plaintiff "must be prepared to prove" that it can satisfy each of the Rule 23 requirements. *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). District courts have broad discretion to determine whether a class should be certified. *A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 479 (2013).

## IV. DISCUSSION

Plaintiffs attempt to bring this action, in Count III of their Second Amended Complaint, pursuant to the provisions of Federal Rule of Civil Procedure 23(a) and 23(b)(2), as a class action for themselves and as representatives of, and on behalf of, all other persons similarly situated. (Doc. 35 at 15.) Plaintiffs allege that New West follows a common policy and practice of systematically denying substance abuse and mental health treatment in violation of the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("the Federal Parity Act") and Montana State Parity laws. 42 U.S.C.A. § 300gg-26 (West); Mont. Code Ann. § 33–22–701, et seq. (West). Plaintiffs allege further that New

West uniformly employs the use of impermissible criteria for treating addiction cases in violation of state and federal parity laws.

Plaintiffs request that this Court declare that New West wrongfully has engaged in an unlawful pattern and practice of denying the class of Alcohol, Mental Illness, and Drug Addiction benefits. Plaintiffs seek an injunction from this Court that would order New West to reopen and properly adjust the class members' claims for Alcohol, Mental Illness, and Drug Addiction benefits using criteria that pass muster under the Federal Parity Act. (Doc. 35 at 16-20.) Plaintiffs further request that the Court order New West to reimburse the members of the class for the money that they paid for such benefits that New West should have paid, and to disgorge any money that New West earned from the profits that it obtained from its unlawful conduct. *Id.*

a. The Putative Class

The Gordons originally proposed the following class for injunctive relief:

> All beneficiaries as such term is used under the provisions of 29 U.S.C. §1002(8) of "ERISA plans" as that term is defined under the provisions of 29 U.S.C. §1002(1) for which Defendant provided insurance services known as "New West Health Plan" for such ERISA Plans in which beneficiaries have made application for treatment for mental health, alcohol, chemical, and/or drug abuse and/or addiction; who were in need of alcohol and/or drug treatment; and, who were denied said benefits by Defendant on the grounds that said treatment was not medically necessary.

(Doc. 35 at 15–16.) The Gordons defined the class more specifically after further discovery.

They have identified a uniform policy applied by New West—the use of the Milliman guidelines in determining medical necessity—that they allege lends a common factual and legal issue to the class. (Doc. 80 at 19-21.) The putative class contains all New West insurees who submitted and were denied claims for substance abuse treatment on the basis of the Milliman guidelines. Plaintiffs claim that only the ASAM guidelines can be used for this purpose under Montana law, to the exclusion of the Milliman guidelines. Id.

The Gordons' putative class contains 37 members. (Doc. 80 at 16.) New West denied benefits completely to some of these class members and partially denied benefits to some (e.g. approved for a shorter duration residential or inpatient program than was claimed). (Doc. 85 at 13.) Only a portion of the 37 putative members submitted a claim for the type of residential treatment that the Gordons claim on behalf of their son. Id. The remainder of the class submitted claims for either detox treatment or inpatient treatment. Id.

b. Class Action Requirements

A court may certify a class when certification would conserve the resources of the court and the parties by permitting a common issue to be litigated in an

economical fashion under Rule 23. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).

A party seeking to certify a class action must meet the four requirements of Federal Rule of Civil Procedure 23(a): (1) the class must prove so numerous that joinder of all members would be impracticable; (2) there must exist questions of law or fact common to the class; (3) the claims or defenses of the representative party must prove typical of those of the class; and (4) the representative party must fairly and adequately protect the interests of the class. Courts generally refer to these requirements as numerosity, commonality, typicality, and adequacy. A party who satisfies the Rule 23(a) prerequisites then must meet the requirements of at least one of the subsections of Rule 23(b).

c. Rule 23(b)(2) Requirements

Plaintiffs allege that their claims satisfy Rule 23(b)(2). Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) allows certification when the opposing party "has acted or refused to act on grounds that apply generally to the class." *Id*. Plaintiffs claim that final injunctive relief or corresponding declaratory relief proves appropriate respecting the class as a whole. (Doc. 58 at 21.) Plaintiffs cite "recent case law supporting class relief on facts very similar to these." (Doc. 58 at 17.)

New West reports, however, that it has not provided claims administration for any plans using the Benefits Booklet since December 31, 2011, and that it has

no plans to do so in the future. (Docs. 50-1 at 3; 59 at 7.) Further, New West no longer administers any commercial health insurance plans. These factors constitute its strongest argument against class certification.

Rule 23(b)(2) certification proves inappropriate "when the majority of the class does not face future harm." *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 525 (5th Cir. 2007). New West argues that when an injunction prohibiting future conduct "would be meaningless" to the plaintiffs, such a situation "leaves monetary claims for retrospective damages predominant in the case," and certification under Rule 23(b)(2) would be improper. (Doc. 59 at 6; *Id.*; see also *Churchill*, at *6.)

New West argues that its decision to stop providing claims administration using the Benefits Booklet, or for commercial clients in general, has rendered moot Plaintiffs' claims for prospective class relief. (Doc. 59 at 7.) Rule 23(b)(2) does not authorize claims for purely, or predominantly, retrospective relief. New West argues, therefore, that Plaintiffs' class claims must fail. *Maldonado*, 493 F.3d at 525. New West further claims that Plaintiffs lack standing to seek prospective relief, because "neither Plaintiffs nor their son are currently covered individuals under any plan for which New West provides claims administration." (Doc. 59 at 7.)

7

New West contends that individualized, monetary damages constitute the only remedy that Plaintiffs seek. (Doc. 59 at 1–2.) It argues that Rule 23(b)(2) and *Walmart v. Dukes* prohibit class certification under Rule 23(b)(2), when each class member would be entitled to an individualized award of monetary damages. (*Id*. at 2.) Plaintiffs counter that courts have permitted plaintiffs in ERISA cases to seek equitable relief in the form of a "surcharge," or monetary compensation for a deficit resulting from an ERISA fiduciary's breach of duty. Doc. 58 at 8–9 citing *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015).

Plaintiffs argue that putative class members seek a surcharge that properly should be categorized as part of their declaratory and injunctive relief. *Id*. New West claims that whether monetary relief proves equitable proves "irrelevant" because Rule 23(b)(2) does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. 1996 Advisory Committee Note to Rule 23 at 298; *Dukes*, 131 S.Ct. at 2557.

Plaintiffs refer to numerous ERISA cases to support their claim that monetary damages categorized as a surcharge should be considered equitable relief. *See, e.g., N.Y. State Psychiatric Ass'n, Inc.*, 798 F.3d at 125; *Churchill v. Cigna Corp.*, 2011 WL 3563489 (E.D. Pa. 2011). These cases and many others have characterized certain claims for monetary damages as a surcharge that would

8

qualify the claim as equitable in nature for purposes of assessing the availability of injunctive relief. *See, e.g.*, *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 963 (9th Cir. 2014); *Silva v. Metro Life Ins. Co.*, 762 F.3d 711, 724-25 (8th Cir. 2014); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013).

The courts have addressed the concept of limited monetary damages as a surcharge in the context of a claim for breach of fiduciary duty by a plan administrator under ERISA. Many of the plaintiffs in these cases did not attempt, however, to certify a class. *N.Y. State Psychiatric Ass'n, Inc.* and *Nechis* likewise did not involve class actions. Some cases addressing the concept of surcharge under ERISA have involved putative classes, but the cited cases address possible causes of action under specific ERISA provisions rather than class certification under Rule 23(b)(2). *See, e.g.*, *Bush v. Liberty Life Assurance Co. of Boston*, 77 F. Supp. 3d 900 (N.D. Cal. 2015). These cases have limited bearing on the case at issue. Rule 23(b)(2) governs the Court's decision with respect to class certification rather than ERISA's substantive provisions.

Even if this Court were to consider surcharges permissive relief under 23(b)(2), the Gordons' putative class faces an additional standing problem. *Churchill* concluded that the plaintiff's "affiliation with Cigna [, an insurance company,] ended sometime prior to [the] [c]ourt's consideration of his motion for class certification" and that the plaintiff likely lacked standing as a result.

9

*Churchill*, 2011 WL 3563489 at n. 8. The court denied the certification of the putative class due to the plaintiff representative's lack of standing. *Id.*

The Gordons no longer receive benefits under New West's health plan. Similar to the plaintiff in *Churchill*, the Gordons also would lack standing to certify a Rule 23(b)(2) class. The Court faces only the question of certification of the Gordons' putative class action. The Court does not address the Gordons' ability to bring a claim under ERISA. Plaintiffs have not cited to any class in which a court certified a class action under Rule 23(b)(2), where the putative class representative no longer received benefits, or the defendant no longer engaged in the alleged improper conduct. *See also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) (holding that Plaintiff no longer had standing to sue under ERISA after she stopped being covered by the plan at issue).

Plaintiffs seek to have a bifurcated class action trial. Plaintiffs argue that such an approach should be proper in insurance and/or administrative determination cases such as this. (Doc. 80 at 30-31.) Plaintiffs point to precedent for this type of proceeding, wherein a court resolves common legal questions through a class action, and money damages are determined in individual follow-on trials. *McReynolds v. Merrill Lynch*, 672 F.3d 482, 491 (7th Cir. 2012).

The Court agrees that *McReynolds* authorized the type of bifurcated proceeding that Plaintiffs seek here. Unlike the case at issue, however, the

plaintiffs in *McReynolds v. Merrill Lynch*, 672 F.3d 482 (7th Cir. 2012), sought to enjoin ongoing practices. *Id.* at 483. Likewise, in *Jacobsen v. Allstate Ins. Co.*, 310 P.3d 452, (Mont. 2013), the plaintiffs sought an injunction against the defendant's ongoing general business practice. *Id.*, ¶ 40. The injunction imposed in *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998), similarly required the defendant to remedy an existing, ongoing violation of the law. *Id.* at 1053.

Plaintiffs seek declaratory relief that would require New West to go back and re-evaluate claims of the putative class members under the appropriate standard. It remains undisputed that New West no longer provides claims administration and has not done so since December 31, 2011. It also remains undisputed that New West no longer administers any commercial health insurance plans. The Court has located no case in which a claim under Rule 23(b)(2) proceeded under similar circumstances. Rule 23(b)(2) fails to authorize claims for purely, or even predominantly, retrospective relief. *Maldonado*, 493 F.3d at 525. The Gordons' putative class cannot be certified under Rule 23(b)(2) due to the Gordons' failure to identify any ongoing conduct that they seek to enjoin.

d. Certification under Rule 23(b)(3)

The Gordons have asked, in the alternative, for permission to amend their Complaint by adding a claim for class certification under Rule 23(b)(3). (Doc. 80 at 31-34.) The Court denies class certification under Rule 23(b)(2) in this Order.

11

The Court will entertain Plaintiffs' argument for class certification under Rule 23(b)(3). The Court grants Plaintiffs permission to amend their Complaint accordingly if they so choose.

e. Rule 23(a) Requirements

The Gordons allege that this class action satisfies the prerequisites set forth in Rule 23(a) for maintaining a class action. (*Id*.; Doc. 35 at 15.) Defendant New West argues that Plaintiffs fail to meet the following Rule 23(a) requirements: numerosity, commonality, typicality, and adequate representation. (Doc. 50 at 25–33.) New West further claims that Plaintiffs' proposed class cannot be ascertained due to its overbreadth and amorphous quality. *Id.* at 31-33. The Court will address in turn each of New West's Rule 23(a) arguments.

   1. Numerosity

Rule 23(a)(1) requires that Plaintiffs demonstrate that the class proves so numerous that joinder of members would be impracticable. Fed. R. Civ. P. 23(a)(1). Rule 23(a)(1) provides no bright-line test or minimum number of class members necessary to meet the numerosity requirement. The Court instead must evaluate the specific facts of each case. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Classes of 15 members or fewer generally prove too small, and classes of 16 to 39 members sometimes prove sufficiently numerous, depending on the facts of the case. *A.F. ex rel. Legaard v. Providence Health Plan*,

12

300 F.R.D. 474, 480 (D. Or. 2013); Moore's Federal Practice § 23–05 (2d ed. 1987).

To establish numerosity, Plaintiffs proffer that the Steve Marshall affidavit establishes that New West insured more than 20,000 Montanans during the peak years at issue. (Doc. 58 at 33.) Plaintiffs assert that the Court should take judicial notice that addiction disorders are common. (The New York attorney general's settlement agreement with Excellus states (at ¶ 8) that 11% of New Yorkers have substance abuse disorders.) (*Id.*)

After more discovery, the Gordons now offer 37 putative class members. Plaintiffs contend that, though this number is still in the "grey area," the Court should find numerosity because joinder in this particular case would be impracticable. (Doc. 80 at 21-24.) Plaintiffs claim that joinder impracticability represents the heart of the numerosity inquiry. Plaintiffs contend further that, in this particular case, joinder would be difficult due to the heavy redactions of contact information in discovery materials. (Doc. 80 at 23-24,) citing *Twegbe v. Pharmaca Integrative Pharmacy*, 2013 WL 3802807 (N.D. Cal. July 17, 2013).

The Gordons' putative class falls near the top of the numerosity grey area range. This relatively high number, combined with the difficulties of joinder, persuades the Court to agree with Plaintiffs' arguments. The Gordons' putative class meets the numerosity requirement.

2. Commonality

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Dukes*, at 2551. The Supreme Court in *Dukes* noted that "the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once." *Id*. The Court opined that "their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor." *Id*.

The common contention must be of such a nature that it proves capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke. *Id*. The Supreme Court in *Dukes* phrased the inquiry as follows:

> "What matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Id*.

As in *Dukes*, proof of commonality necessarily overlaps in this case with Plaintiffs' merits contention that New West unlawfully used the Milliman criteria in determining what types of substance abuse treatment were medically necessary.

Plaintiffs argue that insurance providers in Montana must use the ASAM guidelines to determine proper substance abuse treatment. (Doc. 80 at 19-20.) Plaintiffs argue that New West instead used the Milliman guidelines in analyzing the Gordons' claim and those of the rest of the class. Plaintiffs' proffer this alleged unlawful practice in evaluating claims for substance abuse treatment as the commonality of the class.

It appears preliminarily to the Court as though New West used a mix of both the ASAM and the Milliman guidelines to determine that E.G.'s (Gordon minor) treatment was not medically necessary. Plaintiff did cite to a New West intake report for E.G. that purported to use only the Milliman guidelines (Doc. 80 at 12) and the New West response to the Insurance Commissioner that heavily referenced the Milliman guidelines (Doc. 80 at 13-15.) This intake report was not the final decision on E.G.'s claim.

The Medical Director at New West made all final decisions on substance abuse treatment claims after having consulted with the Behavioral and Mental Health Specialist (Doc. 85 at 8-9.) New West's response referenced the ASAM guidelines as well as the Milliman Guidelines. (Doc. 80 at 13-15.) Original reports from E.G.'s case state that both the Medical Director and the Behavioral and Mental Health Specialist used the ASAM and Milliman guidelines to determine that E.G.'s treatment was not medically necessary. (Doc 85 at 9.)

New West's use of the ASAM guidelines as well as the Milliman guidelines may prove fatal for the Gordons at the merits stage of this proceeding. It is only necessary at the class certification stage, however, for the Court to determine that New West treated putative class members similarly, such that a class action judgment would resolve their claims. The Court is satisfied that the Gordons have met this bar.

3. Typicality

Named Plaintiffs must demonstrate that their claims are typical of the claims of the class in order to satisfy Rule 23(a)'s typicality requirement. "The commonality and typicality requirements of Rule 23(a) tend to merge." *Ambrosia v. Cogent Communications, Inc.*, 312 F.R.D. 544, 554 (N.D. Cal. 2016), quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). Under Rule 23(a)(3), the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Legaard v. Providence Health Plan*, 300 F.R.D. 474, 482 (D. Or. 2014), quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

New West's use of the Milliman guidelines—either to the exclusion of, or in conjunction with, the ASAM guidelines—provides the potential commonality between the claims of the putative class. The Gordons credibly allege that New West used the Milliman guidelines in adjusting their son's claim. The Gordons'

claim shares in the commonality of the class. The Gordons' claim satisfies the typicality requirement as a result.

   4. Adequate Representation

Courts have interpreted the adequacy requirement to encompass a multitude of factors, including "the qualifications of counsel for the representative, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that a suit is collusive." *Ambrosia*, 312 F.R.D. at 555, quoting *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

The Gordons' counsel have demonstrated that they are experienced in class actions. (Anderson Aff., ¶ 15.) The Court does not predict any significant conflicts of interest between the representatives and the absentees given the commonalities between their claims. The putative class possesses adequate representation in the Gordons and their counsel.

   5. Class Ascertainability

New West additionally claims that a class must be "adequately defined and clearly ascertainable" in order to be certified under 23(a). Doc. 50 at 31, quoting *Daniel F v. Blueshield of Cal.*, 305 F.R.D. 115, 120 (N.D. Cal. 2014). The Gordons have demonstrated that an ascertainable class can be developed by offering a defined putative class of 37 persons. (Doc. 80 at 16.) The Court is satisfied that the putative class is adequately defined and clearly ascertainable.

Accordingly, **IT IS ORDERED**:

1. Plaintiffs' Motion for Class Certification (Doc. 79) is **DENIED**.

2. Defendant's Motion to Deny Class Certification (Doc. 49) is **GRANTED**.

3. Plaintiffs possess the Court's permission to amend the Complaint to include a claim for class certification under Fed. R. Civ. P. Rule 23(b)(3).

DATED this 25th day of January, 2017.

Brian Morris
United States District Court Judge